# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 96-60371
(Summary Calendar)

RAY E. MIDDER,

                                                    Petitioner,

versus

FEDERAL LABOR
RELATIONS AUTHORITY,

                                                    Respondent.

Appeal from an Order of the
Federal Labor Relations Authority
(DA-CA-30545)

July 18, 1997

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Ray Midder (Midder) appeals the Federal Labor Relations Authority's (the Authority) Order

upholding the Bureau of Engraving and Printing Western Currency Facility's (Bureau) termination

of him. The Authority adopted the Administrative Law Judge's (ALJ) decision which concluded that

the Bureau did lawfully terminate Midder. 51 FLRA 1014, 1996 WL 145511, *14 (1996). For the

following reasons, we affirm.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## BACKGROUND

Midder was a probationary police officer with the Bureau at its Fort Worth, Texas facility when he was terminated. The police force at this facility was represented by the American Federation of Government Employees, Local 29 (Local 29). Subsequently, dissatisfaction arose concerning the quality of representation Local 29 was providing. Consequently, certain officers at the Bureau contacted the Combined Law Enforcement Association of Texas, Communication Workers of America, AFL-CIO (CLEAT) and began participating in organizational activities on its behalf. Several police officers, including Midder, were active CLEAT supporters. Midder was the point of contact for the evening shift, passing out information to other officers and signing up people to join CLEAT.

While the CLEAT organizational campaign was underway, the Bureau received a report that Officer Hilton Moore had threatened to do bodily harm to one or more other police officers. Although Officer Moore was exonerated, the Bureau's investigation disclosed numerous telephone calls in which the caller would emit loud, insane-sounding laughter and would hang up without otherwise speaking. These calls became known as "Mad Laugher" calls. The bureau then expanded its investigation to determine who had engaged in "Mad Laugher" activity and to stop the activity.

As a result of the expanded investigation, Carol Williamson, Manager of the Security and Police Services Branch, recommended that a number of officers be disciplined due to their participation in "Mad Laugher" calls. Williamson's recommendations included, among other things, termination. Among the employees Williamson recommended for termination were probationary employees, career-status employees, and a supervisor. Basically, the employees Williamson recommended for termination were those employees who participated in "Mad Laugher" calls and

who lied about their involvement. Midder was among the employees recommended for termination.[1]

Upon review, the Bureau upheld some of Williamson's termination recommendations, such as Midder's, and modified others.

As a result of his termination, Midder filed an unfair labor practice charge (ULP) with the Authority's General Counsel, alleging that he was terminated for engaging in activities protected by section 7102 of the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (1994) (the Labor Statute).[2] The case was first brought before an ALJ, who found that the Bureau had not violated the Labor Statute by terminating Midder.[3] Specifically, the ALJ held that the Bureau had not terminated Midder for engaging in protected activity. The General Counsel filed exceptions to this ruling, and appealed to the Authority. After reviewing the General Counsel's exceptions, the Authority adopted the ALJ's decision. Thereafter, Midder timely filed this appeal.

## STANDARD OF REVIEW

"Authority action shall be set aside only if 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'" 5 U.S.C. §§ 7123 (c) and 706 (2)(A); *U.S. Dept. of Justice v. FLRA*, 955 F.2d 998, 1001 (5th Cir. 1992); *EEOC v. FLRA*, 744 F.2d 842, 847 (D.C. cir. 1984), *cert. dismissed*, 476 U.S. 19 (1986). "Further, the Authority's findings of fact are to be affirmed if supported by substantial evidence on the record as a whole." *Dept. of Justice*, 955 F.2d at 1001.

---

[1]When questioned under oath about his involvement in Mad Laugher activities, Midder lied and denied he was involved.

[2]Section 7102 of the Labor Statute defines an employees' rights and includes, *inter alia*, the right to act for a labor organization in a representative capacity and to present the views of the labor organization to third parties. Midder was engaged in these types of activities at the Bureau.

[3]Section 7116 of the Labor Statute defines what is an unfair labor practice for both the employer and the labor organization. This is the section that was implicated here.

3

It is well settled that the Authority's role in the public sector "is analogous to that of the National Labor Relations Board (NLRB) in the private sector." *Bureau of Alcohol Tobacco and Firearms v. Authority*, 464 U.S. 89, 92-93 (1983). We afford deference to the reasonable inferences the Authority draws from its findings of fact, even if we might have reached a different view had that matter come before us de novo. *See NLRB v. Delta Gas, Inc.*, 840 F.2d 309, 310 (5th Cir. 1988). Moreover, where findings of fact rest upon credibility determinations, we will defer to the Authority's findings and will overturn them only in rare circumstances. *NLRB v. McCullough Environmental Serv., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993), citing *Centre Property Management v. NLRB*, 807 F.2d 1264, 1268 (5th Cir. 1987).

## DISCUSSION

At issue before us is whether the Bureau committed a ULP when it terminated Midder. Midder contends that the Bureau wrongfully terminated him because of his involvement in protected union activities. The Bureau, on the other hand, states that it terminated Midder, not because of his union activities, but because of his participation in unlawful activities and his denial of his involvement in those activities. As mentioned earlier, certain employees of the Bureau were making harassing phone calls (Mad Laugher calls) to other Bureau employees. After an investigation was conducted, it was learned that Midder, among others, was making some of these calls. When later questioned about this allegation, Midder lied under oath about making the calls.

On appeal, Midder does not challenge either the ALJ's finding that Midder engaged in the "Mad Laugher" activity or the finding that he lied about his involvement—under oath—during the agency's investigation. The essence of Midder's argument is that these incidents were not the reasons

4

for his termination but instead it was his participation in protected union activities that resulted in his termination. Midder claims he was the victim of disparate treatment by the authority.

I. Establishing an Unfair Labor Practice Under the Labor Statute.

Pursuant to section 7116 of the Labor Statute, it is an unfair labor practice to "interfere with, restrain, or coerce any employee in the exercise . . . of any right" under section 7116; or to encourage or discourage membership in a labor organization by discriminating in connection with, among other things, tenure or other conditions of employment. 5 U.S.C. § 7116 (a)(1) and (2). Hence, it is a ULP to terminate or in any way affect a term or condition of an employee's tenure on the basis of his participation in protected union activity. *Internal Revenue Service, Washington D.C.*, 6 FLRA 96, 98 (1981). This is not, however, a prophylactic rule which insulates an employee from any adverse action that an agency[4] may take; on the contrary, an agency may take adverse steps against an employee for any valid reason apart from the employee's union activities.

The plaintiff in a ULP case must follow a two-step burden shifting framework. The plaintiff, through the General Counsel, has the burden of establishing a *prima facie* case of the occurrence of a ULP. The General Counsel must establish by a preponderance of the evidence that the employee had engaged in protected activity and that such activity was a motivating factor in the agency's action. *LetterKenny Army Depot*, 35 FLRA 113, 118 (1990). Once the *prima facie* case is established the burden of going forward[5] then shifts to the agency to defend on two possible grounds: either (1) prove by a preponderance of the evidence that the protected activity was not a motivating

---

[4]The Labor Statute refers to an employer as an agency, hence, any references made hereinafter to an employer in general—excluding the Bureau—will be as "the agency."

[5]The burden of proof always remains with the petitioner.

factor at all in its actions, or (2) prove by a preponderance of the evidence there was a legitimate justification for its action and it would have taken the same action in the absence of the protected activity. *Id.* at 118-120.[6] The ALJ and the Authority concluded that both these defenses were supported by substantial evidence. Because we hold that the Bureau would have terminated Midder in the absence of his union activities, we reject Midder's argument that his union activities were the sole basis for his termination.

II. Evidence Supporting the Authority's Decision.

Midder argues that a co-worker, Rodney Williams, who also made "Mad Laugher" calls and lied about it under oath, was not terminated. Further, Midder contends, both he and Williams were in "identical shoes" with one exception—Midder was a CLEAT organizer, Williams was not. Therefore, the disparate treatment between Midder and Williams could only be attributed to Midder's union activities. Midder next argues that the Authority did not fully consider all arguments forwarded by the General Counsel when it affirmed the ALJ's decision. We find these arguments unpersuasive.

First, Midder and Williams were not the only Bureau employees implicated for making "Mad Laugher" calls, and Williams was not the only such employee retained—in fact, two other guilty employees retained were CLEAT members. Although Midder would like only to compare his situation to Williams', it was important to consider all guilty parties and the respective treatment of each. Second, the decision to terminate an employee was only made after a Bureau official, Williamson, made her recommendations. Williamson's recommendations were either adopted or modified based on the strength of the evidence in each particular case. As such, this procedure was

---

[6]The latter of these defenses involves what the Authority calls a "mixed motive" case. The distinction between both defenses may be somewhat blurred, however, because we decide this case on only the latter defense, we need not elucidate any distinctions.

based wholly on the evidence of the employee's "Mad Laugher" activities, not the employees union activities. Therefore, Midder's union activities and Williams' nonparticipation in union activities, were not compelling distinctions for comparing their punishments. Moreover, Midder has not provided sufficient evidence from which we could discern the nature of Williams' punishment. All we know is that he was not terminated, but that is wholly insufficient to determine whether unlawful reasons predominated the Bureau's decision to terminate Midder and not Williams.

Finally, the Authority was not required to expressly address each and every assertion forwarded by the parties. In light of the Authority's finding that substantial evidence supported the Bureau's actions as lawful, there was no need for it to delve into the minutia of Midder's assertions. *Cf. Banerjee v. Bd. of Trustees of Smith College*, 648 F.2d 61, 66 (1st Cir. 1981) (holding that under Fed. R. Civ. P. 52(a) the court need not repeat as its findings or "make reference to every item of evidence introduced at trial and indicate why it failed to be persuaded thereby. It is enough that findings 'are supported in the context of the whole record to reveal the basis for the court's decision and thus permit review'"). It was sufficient that, along with the possibility that the Bureau considered Midder's union activities when it terminated him, there were also distinct legitimate reasons why it could terminate him. *See id.*

Midder would have this court disregard the uncontroverted facts surrounding his "Mad Laugher" activities and his subsequent denial—under oath—of those activities. Moreover, as a probationary police officer, Midder was apprised of the ramifications of his actions, especially his perjury. Nonetheless, Midder chose to deny the already serious charges against him, heightening their

7

seriousness.[6] We view these undisputed facts as legitimate grounds for terminating Midder. Moreover, because of our deferential standard of review, we conclude that the Authority's decision was supported by substantial evidence and that Midder has failed to prove his claim of disparate treatment. Accordingly, we hold that the Authority's decision was neither arbitrary, capricious, an abuse of discretion, nor contrary to any law. *U.S. Dept. of Justice*, 955 F.2d at 1001.

## CONCLUSION

Therefore, based on the foregoing, we AFFIRM the decision of the Authority upholding the Bureau's decision to terminate Midder.

AFFIRMED.

---

[6]Officially, Midder was terminated for "making false statements in matters of public concern, and improper conduct."